NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1161

FOUR SEASONS MOTOR GROUP, LLC

<u>vs</u>.

SELECT BOARD OF SWAMPSCOTT.

<u>MEMORANDUM AND ORDER PURSUANT TO RULE 23.0</u>

Four Seasons Motor Group, LLC (Four Seasons) appeals from a Superior Court judgment affirming a decision of the select board of the town of Swampscott (board) to suspend Four Seasons' class 2 used car dealer's license for thirty days, with five days to be served and twenty-five days held in abeyance provided no further violations occur, and impose a fine of $3,000.[1] This decision was based on the board's finding, after a show cause

---

[1] The board also ordered that the license Four Seasons currently held at that time be modified to include the following additional conditions:

"At no time shall unregistered, used cars be parked on Humphrey Street or Cedar Hill Terrace. Any unregistered vehicle which is not inspected, prepared for sale and/or in need of repair shall be stored in the rear, indoor garage or back lot to eliminate congestion in the neighborhood and around the property."

hearing, that Four Seasons violated the sole condition of its class 2 license, that "[s]ales are limited to six (6) used cars to be sold," by having more than six used cars for sale at a time.  On appeal, Four Seasons claims that (1) the judge erred in finding that it waived any argument relating to the board's authority to impose a limitation on the license; (2) the condition was unenforceable; (3) the judge improperly failed to address its claim that it was denied the right to a fair hearing; and (4) the board's decision was not supported by substantial evidence.  We affirm.

Discussion.  Four Seasons had appealed the board's decision to the Superior Court pursuant to G. L. c. 140, § 59.  In this posture, we must evaluate whether the Superior Court correctly determined that the board's decision is not based upon an error of law and is supported by substantial evidence.  See Ludvigsen v. Dedham, 48 Mass. App. Ct. 682, 685 (2000); Goldie's Salvage, Inc. v. Selectmen of Walpole, 31 Mass. App. Ct. 726, 732 (1992).  The Superior Court may only review the record before the board, including the reason for its decision, both as to the facts and the law.  Goldie's Salvage, Inc., supra.

Four Seasons first claims that the judge erred in finding that it failed to adequately raise the issue of the board's authority to impose a limitation on the class 2 license during the show cause hearing.  We disagree.  It is a "long-standing

2

principle that arguments not made before an administrative agency generally cannot be raised on appeal." Rivas v. Chelsea Hous. Auth., 464 Mass. 329, 336 (2013).  Here, there is nothing in the administrative record, or in the letter that Four Seasons relies on, that would have put the board on notice of any potential issue with the board's authority to impose a limitation on the license.  Therefore, the judge did not err in finding that Four Seasons has waived this argument on appeal.

Four Seasons next argues that the condition was unenforceable because (1) there is no local bylaw or prescribed policy, rule, or regulation in place authorizing the imposition of a condition limiting the number of cars to be sold; and (2) it is facially ambiguous.  Neither of these claims have merit.

First, Four Seasons misconstrues Grenier v. Selectmen of Shrewsbury, 80 Mass. App. Ct. 460 (2011), in an improper attempt to apply its holding to the facts here.  In that case, we held that the town of Shrewsbury's policy purporting to set a "per se cap" on the number of class 2 used car dealer licenses granted in the town was invalid because it conflicted with the requirement under G. L. c. 140, § 59, that the granting of a class 2 license requires a "case-by-case review." Grenier, supra at 461-462.  Here, by contrast, the town of Swampscott's general licensing scheme is not at all at issue; rather, the board has imposed a condition on Four Seasons' license that

3

limits the number of cars for sale at any one time based on the circumstances pertaining to the business. In any event, as Four Seasons conceded in its complaint, the intent and purpose of the condition is to alleviate traffic and general congestion in the immediate area of Humphrey Street.

Second, the board's interpretation of the condition as unambiguously limiting Four Seasons to having only six cars for sale at any one time is not based on an error of law and is supported by substantial evidence. It should be noted that Four Seasons did not object to or raise an issue with this interpretation of the condition at the outset of the first show cause hearing when the condition was first discussed.[2]

To whatever extent the condition is ambiguous, it is nonetheless clear from the record that Four Seasons understood the condition as limiting it to only having six cars for sale at any one time through its attempts to conceal its violation of the condition from law enforcement officers. Four Seasons only identified the six cars in the front of the lot for sale by means of a "for sale" sticker on the windshield. When asked by

---

[2] After town counsel presented a quick summary of their argument, a member of the board asked, "Six cars per, what's the period of time?" The chair of the board and town counsel both answered that it was six cars for sale at "any one time." The member clarified, "Any one time. So not more than six on the property for sale at any one time." Counsel for Four Seasons made no attempt to rectify any perceived error with this interpretation of the license condition at that time.

4

detectives whether any of the approximately fifty-eight cars on the lot other than the six that had "for sale" stickers on the windshields were for sale, the owner of Four Seasons said that they were not. However, when undercover officers subsequently inquired about purchasing cars that lacked a "for sale" sticker on the windshield, the owner indicated that those cars were, in fact, for sale. Based on their interactions with the Four Seasons owner and employees, the undercover officers were led to believe that every car on the lot was for sale, regardless of whether it was expressly advertised as such.

Additionally, the owner testified that the approximately forty cars listed on the website were stored on the lot, and that he occasionally sells cars listed on the website that are not one of the six vehicles with a "for sale" sticker on the windshield. To do so, the owner or one of his employees will remove the "for sale" sticker on one the six vehicles out front and place it on the car to be purchased by an already-identified purchaser. The owner admitted that this was done to not have more than six vehicles for sale at any one time. It is implausible that Four Seasons would go to such efforts to give the false appearance of having only six cars for sale at any one time if it did not understand that it was limited as such.

Four Seasons also claims that the judge improperly failed to address its claim that it was denied the right to a fair

5

hearing. Even if this is true, the record demonstrates that Four Seasons was granted a fair hearing before the board in accordance with due process. Four Seasons was provided with a "Notice of Show Cause Hearing" approximately eight days prior to the hearing, which clearly set forth the allegation regarding the license and Four Seasons' rights to attend the hearing, be heard, introduce evidence, and be represented by counsel, all of which were granted. Four Seasons' claim that the investigation into the license violation was commenced in retaliation for a letter sent on behalf of Four Seasons to the town administrator regarding annual delays in the renewal of the license was unsubstantiated at the hearing, and this claim has no bearing on the issue of whether Four Seasons violated the condition of its license. Moreover, there is no evidence to support Four Seasons' claim that it was unconstitutionally "pre-judged" to be in violation by at least two board members and a testifying witness.

Finally, the board's decision was supported by substantial evidence. The board expressly credited the testimony of the law enforcement officers, who testified that every vehicle on the lot was for sale, regardless of whether there was a "for sale" sticker on the windshield. Despite what Four Seasons claims, the mere fact that a car on the lot is not one of the six with a "for sale" sticker on it does not preclude Four Seasons from

6

having the car available for sale, in violation of the license condition.  Additionally, the owner's testimony regarding the switching of vehicles and their respective stickers on the lot based on customer inquiries, as well as the advertisement of approximately forty vehicles on the Four Seasons website as being for sale,[3] makes Four Seasons' violation of the license condition clear.  At bottom, the Superior Court correctly determined that the board's decision is not based upon an error of law and is supported by substantial evidence.

<u>Judgment affirmed</u>.

By the Court (Meade, Walsh &
  D'Angelo, JJ.[4]),

Clerk

Entered:  August 27, 2024.

---

[3] The "disclaimer" on the website providing that vehicles posted on the website may not be available for immediate viewing and sale and may not reflect current stock of inventory for sale is clearly another attempt by Four Seasons to mask its license violation, as the owner testified to selling vehicles listed on the website that are not one of the six expressly advertised for sale on the lot.

[4] The panelists are listed in order of seniority.

7